UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NICHOLAS P.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C23-5447-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred by: (1) failing to properly evaluate Plaintiff's testimony concerning his limitations; and (2) failing to properly evaluate Plaintiff's mental health impairments and credit them as severe at step two. (Dkt. # 7 at 1.) As discussed below, the Court REVERSES the Commissioner's final decision, and REMANDS this matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.    BACKGROUND

Plaintiff was born in 1985, has an associate's degree in cybersecurity, and previously worked as a glass shop glazer and a delivery driver. AR at 19, 32, 44-45, 237, 251. Plaintiff has not engaged in substantial gainful activity since November 2019. *Id.* at 17.

ORDER - 1

On November 6, 2019, Plaintiff applied for benefits, alleging disability as of that date. AR at 15. Plaintiff's application was denied initially on November 30, 2020, and on reconsideration on July 28, 2021, and Plaintiff requested a hearing. *Id*. After the ALJ conducted a telephonic hearing on March 24, 2022, the ALJ issued a decision finding that Plaintiff was not disabled and that he could perform work that existed in significant numbers in the national economy. *Id.* at 15, 33-34.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-3. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 1.)

### III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may

neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Erred in Discounting Plaintiff's Testimony

Plaintiff first contends the ALJ erred in discounting his testimony. (Dkt. # 7 at 3-7.) Plaintiff argues the ALJ failed to provide clear and convincing reasons for rejecting his testimony that he needed to alternate between sitting and standing every 15 minutes and that he required the ability to stretch for 20 minutes once to four times a day. (*Id.*)

Absent affirmative evidence showing the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112). The "clear and convincing" standard does not ask "whether [the Court] is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *See Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

At his hearing, Plaintiff testified he was unable to work because of chronic low back pain, with radiating symptoms down his legs from his lumbar spine impairment, and due to chronic fatigue and/or limited endurance that affected his functioning. AR at 54. Plaintiff testified he could walk for only five minutes, or "half a block," stand about 15 minutes before needing to sit, and that he could sit one hour at a time. *Id.* at 56, 61. Plaintiff testified he could repeat this for four to six hours a day, three days a week, but that afterwards, his back was done and that he could not "do anything else the rest of the day that's constructive." *Id.* at 62. Plaintiff testified that between one and four times a day, he took 20 minutes to stretch by sitting on a chair

ORDER - 3

and bending his body forward to touch his toes to ease his back pain. *Id.* at 57-58, 61. Plaintiff testified he relied on a cane at times depending on his pain level, and that he had one to two "worse" days per month, which would require him to sit or lie down for most of the day due to his back pain. *Id.* at 56, 58-59.

In his decision, the ALJ found Plaintiff's allegations were not sufficiently supported because they were inconsistent with medical evidence in the record as well as Plaintiff's activities. AR at 21. With regard to Plaintiff's lumbar spine condition, the ALJ determined the medical evidence in the record did not establish the degree of physical limitation alleged. *Id.* at 26. The ALJ found the medical evidence demonstrated: (1) Plaintiff's chronic back pain improved with medication and medial branch blocks; (2) Plaintiff failed to follow through with provider recommendations to have back surgery, suggesting his pain was not as debilitating as alleged; and (3) that Plaintiff regularly ambulated with a normal gait, demonstrated full range of motion of the spine and extremities, generally had full strength, sensation, and reflexes of the extremities, and that his straight leg raise tests were generally negative. *Id.*

With regard to Plaintiff's activities, the ALJ found the record suggested Plaintiff believed himself capable of working despite his physical impairments. AR at 27. The ALJ found the record demonstrated Plaintiff was able to obtain his associate's degree in cybersecurity in June 2021 and that he applied for jobs throughout the relevant period, including a driving job. *Id.* The ALJ also found that though Plaintiff indicated difficulties with daily functioning, the record demonstrated Plaintiff was "quite active and functional." *Id.* As support, the ALJ cited to: (1) Plaintiff's ability to take care of his parents' home while they were in Washington, D.C.; (2) his ability to independently manage his own self-care, including household chores, driving,

ORDER - 4

shopping, and errands; (3) his ability to care for his grandmothers, including shopping and running errands for them; and (4) his reports of being able to fish and workout. *Id.*

Based on his findings, the ALJ determined Plaintiff was capable of limited light level work activity, with a sit/stand option (allowing for the ability to shift positions every 45 minutes) and allowing for the use of a cane and specific postural and environmental restrictions to account for his pain and physical symptoms. AR at 20, 26, 28.

      i.  *Conflict with Medical Evidence*

In discussing the medical record with respect to Plaintiff's physical functioning, the ALJ recited several of Plaintiff's physical examination findings during the adjudicated period. First, in August 2020, the ALJ noted Plaintiff indicated he was able to shift positions from sitting to standing, climb on and off the examination table, and put on and take off his shoes without any difficulties. AR at 22 (citing *id.* at 339). At that examination, the ALJ specified that Plaintiff was found to ambulate with a normal gait without an assistive device, and that Plaintiff exhibited full range of motion, strength, sensation, and reflexes of the extremities though his straight leg raise tests were found to be positive. *Id.* (citing *id.* at 337, 339-40).

In December 2020, the ALJ noted that Plaintiff undertook an orthopedic consultation for chronic low back pain. AR at 22 (citing *id.* at 378). Upon consultation, Plaintiff was diagnosed with degenerative disc disease, spondylosis, and radiculopathy. *Id.* (citing *id.* at 378-80). Plaintiff was recommended spinal fusion surgery at that appointment but was ultimately referred for pain management and physical therapy while he considered surgery.[1] *Id.* (citing *id.* at 380).

---

[1] Though surgery was recommended by multiple providers, Plaintiff elected physical therapy and medial branch nerve blocks first in lieu of surgery considering his age and the relative success rate of surgery. *See e.g.*, AR at 345, 415, 515, 520, 556.

ORDER - 5

In an annual examination in March 2021, the ALJ noted that Plaintiff continued to complain of low back pain, with radiating symptoms down his legs, which he rated as a 9/10 in pain severity. AR at 22-23 (citing *id.* at 426). The ALJ provided that Plaintiff reported limited benefit from physical therapy, was observed to be leaning to the left due to his back discomfort, and that his straight leg raise tests were returned positive. *Id.* at 23 (citing *id.* at 426, 429). An MRI scan that same month revealed degenerative changes in his back condition that had mildly progressed. *Id.* (citing *id.* at 389-90).

In May 2021, the ALJ noted that Plaintiff participated in an orthopedic consultation for his back pain where he was observed to have ambulated with a normal gait and intact balance. AR at 23 (citing *id.* at 804-05). The ALJ mentioned that Plaintiff was found to have a normal range of motion of the spine and hips and full strength and sensation with negative straight leg raise tests at this consultation. *Id.* The consulting doctor also recommended fusion surgery. *Id.* In July 2021, the ALJ noted a consultative psychological examination where Plaintiff was observed by the provider to have ambulated slowly with a cane. *Id.* at 24 (citing *id.* at 506).

In October 2021, the ALJ noted that at a primary care appointment, Plaintiff reported he was hesitant to have back surgery, but was interested in continued injection therapy. AR at 25 (citing *id.* at 515). At that appointment, Plaintiff was observed to have ambulated with an antalgic gait with a cane due to a walking boot on his right foot from an injury. *Id.* (citing *id.* at 517). In November 2021, in a follow-up primary care appointment, the ALJ referenced that Plaintiff reported gaining 27 pounds from taking olanzapine for his mental health impairments and from working out. *Id.* (citing *id.* at 694). Plaintiff was observed at that appointment to ambulate with an antalgic gait but exhibited a full range of motion. *Id.* (citing *id.* at 696-97). In December 2021, the ALJ documented, Plaintiff participated in a pain management consultation

ORDER - 6

where the treating provider administered lumbar medial branch blocks. *Id.* (citing *id.* at 556). In January 2022, at a follow-up primary care appointment, Plaintiff reported a 50% temporary improvement in his condition with the procedure but noted that it "wore off quickly." *Id.* (citing *id.* at 728).

On this issue, the Court finds that the ALJ erred in discounting Plaintiff's testimony based on the above-cited medical evidence in the record.[2] The ALJ acknowledged the objective medical findings supported a sit/stand option allowing Plaintiff the ability to change positions every 45 minutes, and to keep working while doing so (AR at 20, 26), but failed to provide clear and convincing evidence to rebut Plaintiff's testimony that he required more extensive sit/stand accommodations than accounted for by the ALJ in Plaintiff's residual functional capacity assessment ("RFC"). *See, e.g.*, *Brown-Hunter v. Colvin,* 806 F.3d 487, 493-94 (9th Cir. 2015) (ALJ failed to provide specific reasons allowing for meaningful review where "she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination").

Despite providing a comprehensive summary of Plaintiff's physical examination findings with respect to his back condition, the ALJ failed to explain how Plaintiff's treatment records undermined his testimony regarding his inability to sit for prolonged periods of time. Though the ALJ cited instances where Plaintiff was found to have ambulated with a normal gait, had full range of motion of the spine and extremities, and/or instances where his straight leg raise tests

---

[2] Defendant's response cites to a November 2020 treatment note from a psychological consultative evaluation indicating Plaintiff was able to walk down a steep hill before an appointment and that he took two flights of stairs afterwards to access a parking lot without restriction in his gait or posture. (Dkt. # 14 at 5 (citing AR 346).) However, this reasoning does not appear in the ALJ's decision as a basis to discount Plaintiff's testimony. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely").

ORDER - 7

were found to be negative (AR at 26), the record in fact demonstrates several instances of positive straight leg raise tests (*see e.g.*, *id.* at 79, 82, 93, 339, 354, 429). The ALJ cited improvement in pain after a medial branch block procedure, but failed to note that the improvement wore off quickly. *Id.* at 26, 728. The ALJ also failed to explain how Plaintiff's full range of motion in his spine and extremities specifically contradicted his testimony regarding his inability to sit, stand, and walk for prolonged periods due to his pain. *See id.* at 26. Highlighting or "cherry-picking" objective findings does not satisfy the ALJ's duty to provide clear and convincing evidence. *See Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017).

Given Plaintiff's treatment record, the degree to which Plaintiff's back pain improved with medication and/or therapy was marginal as evidenced by his longitudinal complaints, reports of lack of improvement noted by his providers, continued recommendations for spinal fusion surgery, and report of only a 50% temporary improvement in his symptoms with a medial branch block. *See e.g.*, AR at 404, 415, 417, 515, 556, 728, 798. Plaintiff's reluctance to undergo a spinal fusion surgery in and of itself also fails to clearly and convincingly rebut his testimony that he required more extensive sit/stand accommodations. The record evinces Plaintiff elected to try other treatments, such as physical therapy and branch blocks, due to his age, the low success rate of surgery, and the year-long recovery time. *See id.* at 345, 417, 556.

On this aspect of Plaintiff's testimony, conflict with the medical evidence was not a clear and convincing reason to discount his allegations.

          ii.    *Activities*

As to Plaintiff's activities, the ALJ noted Plaintiff reported living independently and managing his own activities of daily living including cleaning, cooking, laundry, shopping, and running errands. AR at 27, 346. The ALJ also considered that Plaintiff attended school full-time

ORDER - 8

to get an associate's degree in cybersecurity during the adjudicated period and applied for jobs. *Id.* at 48-49, 287, 506, 728-29, 788. The ALJ noted that Plaintiff's daily routine included waking up, taking a shower, getting on the computer, cooking dinner, and going to sleep, and that Plaintiff acknowledged that he would "like to have work in [his] schedule." *Id.* at 568. The ALJ acknowledged Plaintiff cared for his grandmother, which required him to shop and run errands. *Id.* at 27, 304, 307, 563.

On this aspect, the ALJ's decision also fails to adequately explain how Plaintiff's activities were at odds with his testimony. An ALJ may discount a claimant's testimony based on daily activities that contradict his testimony. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills"). Nevertheless, "[o]nly if the level of activity were inconsistent with claimant's claimed limitations would these activities have any bearing on claimant's credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

None of the activities cited by the ALJ indicates whether any of the activities required Plaintiff to sit for more than one hour without the ability to stand and stretch for 20 minutes. Plaintiff's ability to obtain an associate's degree does not rebut his claimed limitations as there is no indication he was sitting or standing for prolonged periods to obtain his degree, which Plaintiff reported he acquired slowly due to his mental health impairments and accommodations. *See* AR at 300, 563, 938. Plaintiff's search for employment that he ultimately did not acquire likewise fails to reflect on the extent of his claimed limitations.

Plaintiff's activities of daily living are also not inconsistent with Plaintiff's testimony as one does not need to be "utterly incapacitated" to be disabled. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff

ORDER - 9

has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). Though the record demonstrates Plaintiff was able to perform cooking, self-care tasks, chores, and errands independently, it is clear Plaintiff's back impairment restricted his ability to perform such tasks due to pain and his inability to sit for more than 30 minutes. *See* AR at 261-264. Plaintiff's ability to care for his parents' home only required him to undertake simple chores, such as getting the mail, taking out garbage, and cleaning up after himself. *See id.* at 46-47. And despite Plaintiff's ability to take his grandmothers shopping, in the same report, Plaintiff also reported difficulty standing and walking for prolong periods due to his back pain and indicated he only shopped once a week for approximately ten minutes for his grandmothers. *See id.* at 303, 305-06.

Finally, Plaintiff reported hobbies such as working out and fishing, but the cited report by the ALJ fails to note whether Plaintiff was actively engaged in such activities when he reported them as hobbies (*see* AR at 568), and in any case, there is nothing in the record indicating these activities required Plaintiff to sit for more than one hour without the ability to stand and stretch for 20 minutes. *See id.* at 265. Because none of the ALJ's cited activities are incompatible with Plaintiff's testimony concerning his inability to sit and stand for a prolonged period, conflict with Plaintiff's daily activities was also not a clear and convincing reason to discount his testimony.

In sum, the ALJ's rejection of Plaintiff's testimony constitutes harmful error because it undercuts the ALJ's findings that he could perform the occupations identified at step five. *See* AR at 33-34. As noted by Plaintiff, the vocational expert testified all the occupations identified in response to the ALJ's hypothetical questions would be eliminated if the individual required the accommodation to stand and stretch 20 minutes after an hour of sitting. *See id.* at 71-72.

ORDER - 10

Because the ALJ failed to provide sufficient reasons to discount Plaintiff's testimony, his testimony must be reassessed on remand.

### B. The ALJ Did Not Err in Evaluating the Severity of Plaintiff's Mental Health Conditions

Next, Plaintiff argues the ALJ erred in evaluating his obsessive-compulsive disorder and psychosis. (Dkt. # 7 at 7-16.) Plaintiff notes his OCD and psychosis were documented throughout the record and argues the ALJ erred in: (1) rejecting medical source opinions of Drs. David Widlan, Alyssa Ruddell, and Dana Harmon about these impairments; (2) failing to include these conditions as severe impairments at step two; and (3) failing to account for resulting limitations from these impairments at step three and in Plaintiff's RFC. (*Id.* at 13-16.) Defendant responds substantial evidence supports the ALJ's consideration of Plaintiff's mental health symptoms, and that he did not err because the ALJ considered all the limitations posed by Plaintiff's mental health impairments. (Dkt. # 14 at 6-10.)

First, with respect to Plaintiff's argument as to the ALJ's evaluation of the medical opinion evidence, Plaintiff's brief contention that the ALJ failed to establish the opinions of Drs. Widlan, Ruddell, and Harmon were not persuasive is conclusory. Plaintiff fails to meaningfully engage with the ALJ's reasoning as to these providers in any specific manner. (*See* dkt. # 7 at 15.) Plaintiff's cursory argument without elaboration, explanation, or citation to supporting evidence is insufficient to establish the ALJ harmfully erred on this basis, and thus, is waived. *See Hurn v. Saul*, 798 F. App'x 976, 979 (9th Cir. 2019) (finding non-specific arguments waived); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (finding claimant waives issue by failing to argue it "with any specificity").

As to the remainder of Plaintiff's step-two argument, at step two an ALJ must determine whether a claimant has at least one severe medically determinable impairment or combination of

ORDER - 11

1  impairments. 20 C.F.R. § 416.920(a)(4)(ii). A medically determinable impairment "must be
2  established by objective medical evidence from an acceptable medical source." 20 C.F.R.
3  § 416.921. Impairments are severe if they "significantly limit" a claimant's "physical or mental
4  ability to do basic work activities." 20 C.F.R. § 416.922(a).

5        "An impairment or combination of impairments can be found 'not severe' only if the
6  evidence establishes a slight abnormality that has 'no more than a minimal effect on an
7  individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting
8  Social Security Ruling ("SSR") 85-28). An ALJ is also required to consider the "combined
9  effect" of an individual's impairments in considering severity. *Id*. The step-two inquiry is
10 "merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d
11 1040, 1048 (9th Cir. 2017) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987)).

12       In this case, the ALJ found Plaintiff's severe impairments included lumbar degenerative
13 disc disease, lumbar spondylolysis, generalized anxiety disorder, and somatic symptom disorder.
14 AR at 17. The ALJ acknowledged Plaintiff exhibited several mental health symptoms resulting
15 in varying mental health diagnoses in the record but noted that he "considered all of [Plaintiff's]
16 symptoms regardless of individual diagnosis." *See id.* at 17 n. 1. Relevantly, the ALJ's decision
17 identified Plaintiff's auditory hallucinations as a reported mental health symptom, noted Plaintiff
18 was twice admitted to inpatient care for auditory hallucinations on self-referral, but found his
19 auditory hallucinations improved with treatment while on olanzapine. *Id.* at 21, 24 (citing *id.* at
20 819-20, 877). The ALJ also considered Plaintiff's skin-picking, as related to Plaintiff's OCD
21 and/or anxiety, his social embarrassment about it, and that this symptom improved with
22 treatment while on escitalopram. *Id.* at 24-25.

23

ORDER - 12

On this issue, the ALJ provided substantial evidence in support of his determination that Plaintiff was able to sustain work activity despite his mental health symptoms. This includes, *inter alia*, reference to medical records indicating Plaintiff's continued improvement with both mental health impairments as being managed effectively since July 2021 with treatment. *See* AR at 520, 525, 530, 563, 699, 710, 733, 762, 787. The ALJ also cited to evidence in the record demonstrating Plaintiff remained consistently engaged with his medical and mental health professionals, which the ALJ found demonstrated Plaintiff could tolerate some degree of social interaction in the workplace. *See id.* at 339, 346, 506, 517, 522, 526, 697, 713, 73, 790, 820. Though Plaintiff proposes an alternative interpretation of the evidence relating to these specific mental health impairments, the Court finds the ALJ's interpretation reasonable considering the record. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (finding where the evidence is susceptible to more than one rational interpretation, the Commissioner's interpretation must be upheld). Moreover, despite Plaintiff's argument the ALJ ignored his OCD and/or psychosis at step three, the ALJ clearly acknowledged Plaintiff's mental health symptoms with regard to his memory, understanding, ability to complete tasks, ability to interact with others, ability to concentrate, and ability to adapt and manage himself in evaluating the Paragraph B criteria based on Plaintiff's presentation to his mental health providers. *See* AR at 19-20.

Finally, in assessing the RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). "The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Buck*, 869 F.3d at 1049 (emphasis in original). Here, it appears any error at step two was ultimately harmless because the ALJ accounted for Plaintiff's mental health limitations in the assessed RFC by restricting his

ORDER - 13

work activity to limited public interaction to account for his difficulties with social functioning due to his mental health impairments. *See* AR at 20, 24, 27. Plaintiff fails to demonstrate the ALJ should have included additional limitations in the RFC assessment with regard to his OCD and auditory hallucinations, and thus, fails to show the ALJ committed harmful error by omitting them as serious impairments at step two. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless.").

## V.     CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED, and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reconsider Plaintiff's testimony, reassess his residual functional capacity, make a new step five finding, and reevaluate any other portion of the decision as appropriate and necessary.

Dated this 5th day of January, 2024.

MICHELLE L. PETERSON
United States Magistrate Judge